**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| JOEL GREENE, | |
|                 Plaintiff, | CIVIL ACTION NO.: 4:21-cv-277 |
|      v. | |
| BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, et. al., | |
|                 Defendants. | |

## O R D E R

This case arises from the allegedly deficient medical care Plaintiff Joel Greene received while incarcerated at Coastal State Prison. (Doc. 1, pp. 38–43.) Plaintiff filed a Complaint against Defendants Board of Regents of the University System of Georgia ("BOR"), Georgia Department of Corrections ("GDC"), Dr. Olatunji Awe, and Physician Assistant LaToya Hall (collectively, "Defendants"), alleging that Defendants violated his Eighth Amendment rights under the United States Constitution and state law. (See id. at pp. 30–45.) Presently before the Court is Defendants' Motion for Partial Judgment on the Pleadings, seeking dismissal of the 42 U.S.C. § 1983 claims asserted against them. (Doc. 34; see doc. 34-1.) Plaintiff filed a Response, (doc. 35), and Defendants filed a Reply, (doc. 37). For the following reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Partial Judgment on the Pleadings. (Doc. 34.)

# BACKGROUND

Because this matter is before the Court on a motion for judgment on the pleadings,[1] the Court accepts all well-pleaded facts in the Complaint and First Amended Complaint as true and draws all reasonable inferences in favor of the non-movant.[2] See Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006).

## I.    Factual Background

### A.    Factual Allegations

Plaintiff is a former state prisoner who, at all times relevant to this suit, was incarcerated at Coastal State Prison ("CSP"), which is owned and controlled by Defendant GDC.  (Doc. 1, pp. 1, 31.)  Georgia Correctional Healthcare, which is affiliated with Defendant BOR, is the medical provider at CSP.  (Id. at p. 31.)  Defendants Dr. Olatunji Awe and Physician Assistant ("P.A.") LaToya Hall work at CSP.  (See id. at pp. 32–33.)

---

[1]  Though stylized as a motion for partial judgment on the pleadings, Defendants contend that they bring their Motion pursuant to Federal Rule of Civil Procedure 12(b)(6).  (See doc. 34, p. 1.)  Regardless, "[t]he legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same."  Marshall v. Safeco Ins. Co. of Ind., No.1:12-cv-113, 2013 WL 12155468, at *1 (S.D. Ga. Apr. 16, 2013).

[2]  Prior to the removal of this case to this Court, Plaintiff filed a First Amended Complaint in the State Court of Chatham County.  (Doc. 1, pp. 151–54.)  The First Amended Complaint specifically incorporates and refers to the entirety of the original Complaint, as well as the exhibits attached to the original Complaint.  (Id. at p. 151.)  Therefore, the original Complaint and the First Amended Complaint, together, make up the operative pleading in this case.  See Gilliam v. U.S. Dep't of Veterans Affairs, No. 2:16-cv-255-FtM-29CM, 2018 WL 3707834, at *1 n.1 (M.D. Fla. Aug. 3, 2018) ("Because the Second Amended Complaint references the allegations of fact stated in the Amended Complaint, the Court treats the Amended Complaint as being incorporated into the Second Amended Complaint."); see also Slayman v. U.S. Internal Revenue Serv., No. 4:19-cv-74, 2020 WL 2475814, at *1 (S.D. Ga. May 13, 2020) ("[A]n original complaint . . . still ha[s] legal effect if 'the amendment specifically refers to or adopts the earlier pleading.'") (quoting Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982); cf. Varnes, 674 F.2d at 1370 n.6 ("As a general rule, an amended complaint supersedes and replaces the original complaint *unless the amendment specifically refers to or adopts the earlier pleading*.") (emphasis added).

Prior to his incarceration at CSP, Plaintiff, who is a Type 2 diabetic, had his left foot's first and fifth toes amputated while incarcerated at Jackson Diagnostic and Classification State Prison in May 2017.  (Id. at p. 38.)  To help the foot heal, Plaintiff had stents placed in his left leg and skin grafts taken from his left thigh.  (Id.)  On April 23, 2019, Plaintiff visited Dr. Awe at CSP's infirmary due to infection and swelling in his left foot, which was caused by an abrasion on top of his second toe.  (Id.)  Dr. Awe prescribed Plaintiff with Clindamycin, an antibiotic, to treat the infection and a "water pill" to treat the swelling.  (Id.)  Notably, Dr. Awe did not refer Plaintiff to a vascular surgeon.  (Id. at p. 39.)  Plaintiff's toe condition subsequently worsened.  (Id.)  Therefore, he visited Dr. Arlene Wilson on May 3, 2019.[3]  (Id.)  Dr. Wilson prescribed Plaintiff with Bactrim and Keflex and put him on a three-shot regiment of Rocephrin.  (Id.)  At some point during this time, Plaintiff informed "medical staff" that he believed he was suffering from methicillin-resistant staphylococcus aureus and that they were not "doing enough to treat it properly."  (Id.)  In response, Plaintiff was informed by an unspecified member of the medical staff that the drugs would be effective and that he would be referred to a "wound care clinic."  (Id.)  Notably, Plaintiff was not referred to a vascular surgeon.  (Id.)

From May 3 through May 28, 2019, Plaintiff's infection worsened, but despite Plaintiff's complaints and grievances, the prison and medical staff did not attend to Plaintiff's toe condition during that time.  (Id.)  On May 29, 2019, Plaintiff visited a wound care clinic and was told that there was "nothing [that] could be done other than to refer him to a vascular surgeon for amputation" of his second toe.  (Id.)  However, Plaintiff again was not referred to a vascular surgeon.  (Id.)  The next day, May 30, 2019, Plaintiff attended a "follow-up appointment" with P.A. Hall.  (Id. at p. 40.)  During that appointment, Hall told Plaintiff that "she had no information

---

[3] Dr. Wilson was an original defendant to this suit, but Plaintiff voluntarily dismissed the claims against Dr. Wilson pursuant to Federal Rule of Civil Procedure 21.  (See doc. 48, p. 5.)

for him, that there was nothing to discuss, . . . that she had a lunch date[,] and [that she] had no time to speak." (Id.)  Notably, Hall did not refer Plaintiff to a vascular surgeon. (Id.)

On June 6, 2019, Plaintiff attended another appointment with Hall, and Hall again informed Plaintiff that "she had no news for him and that there was nothing to discuss." (Id.)  At some point during the appointment, Plaintiff removed his left shoe and revealed that his shoe was full of blood, that his left foot "had not been treated for weeks," and that he had run out of antibiotics. (Id.)  Hall responded, "Well, [I] guess we have to do something about that," and told Plaintiff not to be "showing [her] this shit or [she would] be losing [her] lunch." (Id.)  The next morning, June 7, 2019, at 2:30 a.m., Plaintiff awoke to discover that his second toe had "fallen off" his left foot overnight. (Id.)  He was taken to the infirmary two hours later. (Id.)  After being transported to a hospital, a vascular surgeon amputated Plaintiff's second toe on June 8, 2019. (Id.)  Plaintiff also received a stent graft in his left femoral artery. (Id.)  The hospital then released Plaintiff. (Id.)

**B.      Dr. Richard Hershberger's Affidavit**

Plaintiff attached an Affidavit written by Dr. Richard Hershberger, a vascular surgeon, to the Complaint.[4]  (Doc. 1, pp. 126–29.)  In the Affidavit, Dr. Hershberger opined that, based on Plaintiff's medical history, Plaintiff was "the definition of a high-risk vascular patient." (Id. at pp. 127–28.)  Dr. Hershberger further stated that the standard of care to treat a patient such as Plaintiff

---

[4]  A court may consider documents attached to a complaint when ruling on a motion for judgment on the pleadings. Burgest v. Bd. of Regents of Univ. Sys. of Ga., No. 4:19-cv-335, 2021 WL 1187088, at *2 (S.D. Ga. Mar. 29, 2021) ("To decide a motion for judgment on the pleadings, a court may consider any of the pleadings, including the complaint, the answer, and any written instruments attached to them.") (internal quotations omitted) (citing Fed. R. Civ. P. 10(c)); RM Broadcasting, LLC v. U.S. Dep't of Justice, 379 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019); see also Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss . . . .").  Thus, because Plaintiff's First Amended Complaint specifically incorporates the exhibits attached to the Complaint, including Dr. Hershberger's Affidavit, (see doc. 1, p. 151), the Court may consider it.

"requires routine evaluation by a vascular surgeon as well as regular arterial studies." (Id. at p. 128.) More pertinent to the time when Plaintiff lost his toe while incarcerated at CSP, Dr. Hershberger stated that "[t]he standard of care for any patient with severe peripheral vascular disease that develops wounds and cellulitis to the foot is prompt referral to a board-certified vascular surgeon for evaluation." (Id. at p. 129.) The Affidavit further asserts that, "[i]n [Plaintiff's] case, medical personnel at [CSP] deviated from the standard of care by not promptly referring [Plaintiff] to a board-certified vascular surgeon for evaluation." (Id.) Dr. Hershberger believes to "a high degree of medical certainty" that "[h]ad the standard of care been followed, . . . the loss of [Plaintiff's] left second toe likely would have been prevented." (Id.)

## II.    Procedural History

Plaintiff initially filed this suit in the State Court of Chatham County. (See id.) Plaintiff alleges a state law negligence claim against all Defendants and a Section 1983 deliberate indifference to serious medical needs claim against Defendants Dr. Awe and P.A. Hall in their individual capacities.[5] (See id. at pp. 41–43; see also doc. 35, pp. 7–8.) Defendants subsequently removed the case to this Court, (doc. 1, pp. 1–3), and filed the at-issue Motion for Partial Judgment on the Pleadings, (doc. 34). Plaintiff filed a Response, (doc. 35), and Defendants filed a Reply, (doc. 37).

---

[5] Defendants move for dismissal of any federal Section 1983 claims against Defendants BOR and GDC on the basis of sovereign immunity and the Eleventh Amendment. (Doc. 34-1, pp. 4–5.) In his Response, Plaintiff concedes that he is not pursuing any Section 1983 claims against Defendants BOR and GDC and clarifies that his Section 1983 claims against Defendants Dr. Awe and P.A. Hall are asserted against them in their individual capacities. (Doc. 35, pp. 7–8.) Therefore, to the extent Plaintiff alleged Section 1983 claims against Defendants BOR and GDC or Defendants Dr. Awe and P.A. Hall in their official capacities, those claims are **DISMISSED**.

## STANDARD OF REVIEW

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the substance of the pleadings and any judicially noticed facts." Cunningham v. Dist. Att'y's Off. for Escambia Cnty., 592 F.3d 1237, 1255 (11th Cir. 2010). "The legal standards applicable to Federal Rule of Civil Procedure 12(c) motions for judgment on the pleadings and Rule 12(b)(6) motions to dismiss are the same." Marshall, 2013 WL 12155468, at *1. Therefore, the Court must "accept as true all material facts alleged in the non-moving party's pleading, and . . . view those facts in the light most favorable to the non-moving party." Perez v. Wells Fargo, N.A., 774 F.3d 1329, 1335 (11th Cir. 2014). The Court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"A complaint must state a facially plausible claim for relief, and [a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (internal quotation marks omitted). The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and dismissal is proper. Iqbal, 556 U.S. at 678 (internal quotation marks and citation omitted).

**DISCUSSION**

In the Complaint, Plaintiff alleges a state law negligence claim against all Defendants and Eight Amendment deliberate indifference to serious medical needs claims pursuant to Section 1983 against Defendants Dr. Awe and Hall in their individual capacities.  (See doc. 1, pp. 41–43; see also doc. 35, pp. 7–8.); see also Note 5, supra (dismissing Plaintiff's claims against Dr. Awe and Hall to the extent those claims were asserted against them in their official capacities).  Defendants Dr. Awe and Hall move for dismissal of the Section 1983 deliberate indifference claims asserted against them.  (See doc. 34-1.)  The cruel and unusual punishment standard of the Eighth Amendment requires prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  In the medical care context, the standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate.  Farmer, 511 U.S. at 828.  However, "not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.'"  Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105).  Rather, an inmate "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.

In order to prove a deliberate indifference to a serious medical need claim, a prisoner must: (1) "satisfy the objective component by showing that [he] had a serious medical need"; (2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and (3) "show that the injury was caused by the defendant's wrongful conduct."  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  As to the first component, a medical need is sufficiently serious if it "has been diagnosed by a physician as

mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id. (quoting Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir. 1994)).  Under the second, subjective component, the Eleventh Circuit Court of Appeals has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety."  Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Thus, the subjective component requires an inmate to prove: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Melton v. Abston, 841 F.3d 1207, 1223 (11th Cir. 2016) (abrogated on other grounds by Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), as recognized in Campoverde-Panora v. U.S. Att'y Gen., No. 21-10131, 2021 WL 5414940, at *2 (11th Cir. Nov. 19, 2021)).  "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).  However, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment does not support a claim of deliberate indifference."  Melton, 841 F.3d at 1224 (internal quotations omitted).   In other words, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106. Furthermore, deliberate indifference is not established when an inmate receives medical care but "may have desired different modes of treatment."  Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985).

I.      **Eighth Amendment Deliberate Indifference Claim against Dr. Awe**

The Complaint alleges that Dr. Awe was the first CSP physician to examine Plaintiff's infected and swollen left foot, which was allegedly caused by an "abrasion" on his second toe.

(See doc. 1, pp. 38–39.)  Dr. Awe prescribed an antibiotic to treat the infection and a water pill to treat the swelling.  (Id. at p. 38.)  The Complaint further alleges that Dr. Awe "did not promptly refer Plaintiff to a board-certified vascular surgeon for evaluation" despite a "clear record of severe left lower extremity vascular disease and a history of amputations." (Id. at pp. 41–42.)  Defendants move for dismissal of Plaintiff's deliberate indifference claim against Dr. Awe, arguing that "[t]he fact allegations in the complaint do not show that Dr. Awe was deliberately indifferent to Plaintiff's medical needs." (Doc. 34-1, p. 8.)  Specifically, Defendants argue that because "the allegations are that Dr. Awe provided a course of treatment for Plaintiff's condition" and the "[C]omplaint does not allege that Dr. Awe subjectively knew his prescribed course of treatment for Plaintiff was inadequate," the Complaint fails to sufficiently allege a deliberate indifference claim.  (Id.)

The Court finds that the Complaint fails to state an Eighth Amendment claim of deliberate indifference to a serious medical need against Dr. Awe.  Specifically, the Complaint fails to allege facts showing that Dr. Awe's conduct amounts to "more than mere negligence." Bingham, 564 F.3d at 1176.  "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." Id.  Furthermore, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." Salas v. Tillman, 162 F. App'x 918, 921–22 (11th Cir. 2006) (quoting Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995)).  Indeed, negligence in treatment, even rising to the level of medical malpractice, does not constitute deliberate indifference. See Estelle, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.

Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  The Eleventh Circuit has held that "the refusal to provide proper treatment must not be simply a medical choice but a *gross violation* of accepted practice." Howell v. Evans, 922 F.2d 712, 721 n.9 (11th Cir. 1991) (emphasis added); see id. at 721 ("We acknowledge that, from these facts, Mendoza could have committed malpractice.  He left the hospital when the patient was receiving treatment for a serious illness, and he was unavailable during the day when needed.  He also may not have diligently pursued alternate treatment at another hospital and may not have prescribed further treatment soon enough.  Yet none of these allegations rise beyond negligence to the level of a refusal to treat as outlined by Estelle.").  Moreover, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Harris v. Thigpen, 941 F.2d at 1507 (quoting Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

Notably, the Complaint does not allege that Dr. Awe refused to treat Plaintiff or withheld treatment from him. (See doc. 1, pp. 30–48.)  Rather, the Complaint essentially alleges that Dr. Awe should have referred Plaintiff to a specialist after he visited him on a single occasion with a swollen and infected foot, allegedly caused by an abrasion. (See id. at pp. 38–39, 41–42.)  Plaintiff alleges that, rather than prescribing him an antibiotic to treat the infection and a water pill to treat the swelling, Dr. Awe should have "promptly refer[red] [him] to a board-certified vascular surgeon for evaluation and that Dr. Awe's failure to do so constitutes deliberate indifference. (Id. at pp. 38–39, 41–42.)  Yet, "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989).  Indeed, although these allegations might suffice to state a negligence claim under state law, "[m]ere

negligence or malpractice does not violate the [E]ighth [A]mendment." Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986); see, e.g., Scayles v. Inch, No. 3:19-cv-1311-MMH-PDB, 2022 WL 35991, at *5 (M.D. Fla. Jan. 4, 2022) ("The factual allegations presented by Plaintiffs show that Pedroza diagnosed Williams with epistatic pain and treated him as such—likely a misdiagnosis or a failure to diagnose.  However, while such factual allegations may state a claim of negligence, they do not rise to a level of an Eighth Amendment violation.") (quoting Estelle, 429 U.S. at 106). Indeed, even accepting the factual allegations as true and viewing them in the light most favorable to Plaintiff, the allegations pertaining to Dr. Awe do not amount to conduct that "is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1266 (11th Cir. 2020); see Howell, 922 F.2d at 721 n.9 ("When the Supreme Court set up this standard in Estelle, it referred to two cases of grossly inadequate treatment: one where the doctor injected penicillin into a patient he knew to be allergic, the other where the doctor threw away a salvageable ear and stitched the stump.  The actions and inactions allegedly taken by Mendoza in the present case do not compare with such shocking incidents.") (internal citation omitted); Sherman v. Quest, No. 18-60973-CIV-ALTMAN/Reid, 2020 WL 6791100, at *25 (S.D. Fla. Nov. 19, 2020) ("Nor can Sherman satisfy the other prong ('conduct that is more than mere negligence') of his deliberate-indifference claim.  Medical care violates constitutional guarantees only 'when it is so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness.'  On March 8, 2018, Sherman presented with a small cut, which Henri appropriately treated with some combination of saline solution, Neosporin, and bandages.  For Sherman's side pain, Henri prescribed Motrin and recommended that Sherman seek follow-up care if the pain did not subside.  None of this 'shock[s] the conscience.'") (quoting Keohane, 952 F.3d at 1257, 1266).

Dr. Awe's decision to treat Plaintiff with antibiotics instead of referring him to a specialist "'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." Salas, 162 F. App'x at 922 (quoting Adams, 61 F.3d at 1545); see Harris v. Prison Health Servs., 706 F. App'x 945, 952 (11th Cir. 2017) ("Dr. Nields provided Harris with some treatment—an examination in the emergency room and giving him Tylenol—while Harris wanted other treatment, such as x-rays, immediately. This alone does not establish deliberate indifference.").

Furthermore, "the Eleventh Circuit has held that a provider's refusal to refer a patient to a specialist is 'not deliberate indifference, but a disagreement over a course of treatment.'" Sherman, 2020 WL 6791100, at *26 (quoting Hilton v. McHugh, 178 F. App'x 866, 871 (11th Cir. 2006)). Here, Plaintiff's "core complaint is that he should have been referred to a specialist," Hilton, 178 F. App'x at 871. (See doc. 1, pp. 30–48). However, "that is not deliberate indifference[] but disagreement over a course of treatment," which is not actionable under the Eighth Amendment. Hilton, 178 F. App'x at 871; see Hall v. Skipper, No. 14-22508-CIV-LENARD/REID, 2019 WL 11585183, at *8 (S.D. Fla. Mar. 25, 2019) ("[F]ailure to refer an inmate to a specialist, without more, does not constitute deliberate indifference.") (citing Pyles v. Fahim, 771 F.3d 403, 411 (7th Cir. 2014)). While Plaintiff attached Dr. Hershberger's Affidavit to the Complaint to show that "the standard of care" required Dr. Awe to refer Plaintiff to a vascular surgeon, (see doc. 1, pp. 126–29), the Affidavit "employs the established terminology of negligence and presents no factual allegations which a reasonable fact-finder could credit as deliberate indifference," Howell, 922 F.2d at 722 n.10. Indeed, Dr. Hershberger's Affidavit states that "medical personnel at [CSP] deviated from the standard of care by not promptly referring [Plaintiff] to a board-certified vascular surgeon for evaluation." (Doc. 1, p. 129.) The Affidavit further states that "[g]iven [Plaintiff's]

medical history . . ., these findings should have resulted in immediate referral to [a vascular surgeon]. Instead, [Plaintiff] was prescribed antibiotics." (Id. at p. 128.)  The Affidavit does *not* assert that treating Plaintiff with antibiotics without referring him to a vascular surgeon was "grossly inadequate, but only that [Dr. Awe] deviated from established standards.  [Dr. Hershberger] does not assert that any treatment was plainly wrong," Howell, 922 F.2d at 722.  (See doc. 1, pp. 126–29.)  The Eleventh Circuit has held that an Affidavit such as Dr. Hershberger's "does not amount to [a showing of] deliberate indifference."  Kruse v. Williams, 592 F. App'x 848, 859 (11th Cir. 2014); see id. ("[E]ven [the] experts' assessments of Williams's behavior do not rise beyond an accusation of malpractice.  Expert witness Sandra Tilton faulted Williams for failing to assess Jordan more thoroughly, but this alleged error does not amount to deliberate indifference.") (citing Howell, 922 F.2d at 719); see Howell, 922 F.2d at 721–22 (finding that an expert's affidavit stating that "[i]t is my opinion that [the prison doctor] failed to use the care and skill which is employed by the profession generally and, in the case of [the plaintiff], he deviated from the established conduct" did not support allegation of deliberate indifference).

Plaintiff argues that "it is improper to dismiss a defendant at the pleading stage when the plaintiff has provided some factual basis to show that the defendant participated in his care." (Doc. 35, p. 11.)  The Court disagrees.  The Eleventh Circuit has repeatedly held that when analyzing Eighth Amendment deliberate indifference claims, "[e]ach individual [d]efendant must be judged separately and on the basis of what that person knows."  Burnette v. Taylor, 533 F.3d 1325, 1331 (11th Cir. 2008); see, e.g., Nam Dang by and through Vina Dang v. Sheriff, Seminole Cnty., 871 F.3d 1272, 1280 (11th Cir. 2017) ("Each individual defendant must be judged separately and on the basis of what that person kn[ew]").[6]  Indeed, "[t]he plaintiff must . . . plead a plausible claim

---

[6] Though Burnette and Nam Dang concerned a deliberate indifference claim of a pretrial detainee under the Fourteenth Amendment, rather than the Eighth Amendment, deliberate indifference claims under the

for deliberate indifference . . . against *each defendant* alleged to have acted with deliberate indifference." Kruse v. Byrne, No. CA 11-00513-KD-C, 2012 WL 5469801, at *4 (S.D. Ala. Oct. 19, 2012) (emphasis added); see, e.g., Cox v. Nobles, 15 F.4th 1350, 1358 (11th Cir. 2021) ("Because the deliberate-indifference analysis is determinative of Cox's Eighth Amendment claims, we examine whether Cox plausibly alleged that *each defendant* acted with deliberate indifference.") (emphasis added).

Finally, Plaintiff argues that the "facts pleaded related to [his] medical history" show that Dr. Awe subjectively knew that "his prescribed course of treatment was inadequate." (Doc. 35, p. 9.) However, as an initial matter, the Complaint fails to allege that Dr. Awe had access to Plaintiff's medical history records, examined those records, or had subjective knowledge that Plaintiff was a "high-risk vascular patient." (See doc. 1, pp. 30–48; see also id. at p. 41.) Instead, the Complaint alleges only that Plaintiff had suffered from and been treated for medical ailments in his left foot at a different state prison in Georgia almost eighteen months prior, without any mention of Dr. Awe having been involved or aware. (See id. at p. 38); see also Spear v. Nix, 215 F. App'x 896, 901 (11th Cir. 2007) ("Day has alleged no facts to support a finding that the defendants possessed the requisite knowledge or acted with the requisite culpability to support a finding of deliberate indifference. For example, Day did not allege that the defendants *knew* he

---

Fourteenth Amendment and Eighth Amendments employ the same standard. See Burnette, 533 F.3d at 1330 n.4 ("[Although] [t]he parties dispute whether the claim here is governed by the Eighth Amendment or the Fourteenth Amendment[,] . . . [t]he distinction is unimportant . . . because . . . the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner.") (internal quotations and citations omitted); Nam Dang, 871 F.3d at 1279 ("As a pretrial detainee, Dang alleges inadequate medical care under the Fourteenth Amendment rather than the Eighth Amendment. Nevertheless, Dang's claims are evaluated under the same standard as a prisoner's claim of inadequate care under the Eighth Amendment.") (internal citations omitted); see also Becker v. Fannin Cnty., No. 2:09-CV-00047-RWS-JCF, 2014 WL 4925681, at *16 (N.D. Ga. Aug. 15, 2014) ("The standard for analyzing deliberate indifference claims is the same . . . whether brought under the Eighth or Fourteenth Amendments.").

suffered from asthma, migraines, or herniated discs, nor did he allege that the defendants *knew* (or should have inferred) that his participation in the SRP created a substantial risk of serious harm to his health."). Furthermore, even if the Complaint alleged that Dr. Awe was subjectively aware that Plaintiff was a "high-risk vascular patient," Plaintiff still failed to allege facts sufficient to establish that Dr. Awe showed "such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (quoting Estelle, 429 U.S. at 106–07). Indeed, the subjective component of the deliberate indifference claims requires Plaintiff to allege factual allegations showing that Dr. Awe's conduct amounted to "more than mere negligence." Melton, 841 F.3d at 1223. As discussed above, the Complaint's allegations sound in state tort law (i.e., negligence) rather than deliberate indifference. Even Dr. Hershberger's Affidavit sounds in negligence. (See doc. 1, pp. 126–29.) The only allegation in the Complaint relating to deliberate indifference is the conclusory allegation that "Dr. Awe . . . [was] deliberately indifferent to Plaintiff's serious medical need in violation of 42 U.S.C. § 1983." (Id. at p. 43.) Such a conclusory allegation is "not entitled to the assumption of truth." McCullough v. Finley, 907 F.3d 1324, 1333 (11th Cir. 2018).[7]

Based on the foregoing, the Court finds that Dr. Awe is entitled to dismissal of Plaintiff's Section 1983 deliberate indifference claim alleged against him.

## II. Eighth Amendment Deliberate Indifference Claim against Hall

Defendants also move for dismissal of the Eighth Amendment deliberate indifference claim asserted against P.A. Hall. (Doc. 34-1, pp. 9–12.) The Complaint alleges that from May 3 through

---

[7] In support of his Eighth Amendment deliberate indifference claim against Dr. Awe, Plaintiff also points to the Complaint's allegation that his infection worsened from May 3 to May 28, 2019, and that "[d]espite informing prison staff and writing grievances, no prison or medical staff attended to Plaintiff's toe during that period." (See doc. 35, p. 10.) However, the Complaint makes no allegation that Plaintiff complained to Dr. Awe, that Dr. Awe was aware of Plaintiff's worsening infection, or that Dr. Awe was aware of any of Plaintiff's grievances to the unnamed prison and medical staff. (See doc. 1, pp. 30–48.)

May 28, 2019, Plaintiff's infection worsened and that, on May 29, 2019, Plaintiff was taken to a wound care clinic, where Plaintiff was told that "nothing could be done other than to refer him to a vascular surgeon for amputation." (Doc. 1, p. 39.)  The Complaint then alleges that on May 30, 2019, Plaintiff had a "follow-up" appointment with Hall.  (Id. at p. 40.)  According to the Complaint, Hall informed Plaintiff that "she had no information for him, that there was nothing to discuss, and that she had a lunch date and had no time to speak." (Id.)  On June 6, 2019, Plaintiff had another appointment with Hall.  (Id.)  During that appointment, Hall informed Plaintiff that she "had no news for him and that there was nothing to discuss." (Id.)  In response, Plaintiff removed the shoe from his left foot, revealing that Plaintiff's shoe was "full of blood." (Id.)  Plaintiff had also run out of antibiotics by this time.  (Id.)  Hall responded that she guessed they would "have to do something about that" and said, "Don't be showing me this shit or I'll be losing my lunch." (Id.)  The Complaint further alleges, "Hall did not promptly refer Plaintiff to a board-certified vascular surgeon for evaluation upon examining his left foot on May 30th, June 6th, or at any other time.  In fact, . . . Hall took no action at all."  (Id. at p. 42.)

Defendants argue that Hall is entitled to dismissal of this claim because the Complaint fails to allege facts showing that Hall was deliberately indifferent to Plaintiff's medical condition or that her alleged indifference caused his injuries.  (Doc. 34-1, pp. 10–12.)  Specifically, Defendants contend that Plaintiff's claim against Hall fails because the Complaint fails to allege that Hall had the authority to refer Plaintiff to a vascular surgeon.  (See id. at pp. 11–12.)  However, unlike Plaintiff's allegations against Dr. Awe, Plaintiff's allegations against Hall are not limited to the failure to refer Plaintiff to a vascular surgeon.  (See doc. 1, p. 42.)  Rather, Plaintiff alleged that Hall "took no action at all" when she saw Plaintiff on two occasions.  (See id. at pp. 40, 42.)  The allegations in the Complaint, accepted as true, indicate that Hall had "knowledge of [Plaintiff's]

need for medical care and intentional[ly] refus[ed] to provide that care." <u>Mandel v. Doe</u>, 888 F.2d 783, 788 (11th Cir. 1989). Indeed, the Complaint alleges that Plaintiff saw Hall twice, and during each appointment, Hall informed Plaintiff "that there was nothing to discuss." (Doc. 1, p. 40.) The Complaint also alleges that during Plaintiff's first visit with Hall, she told him that she "had no time to speak" because she "had a lunch date." (<u>Id.</u>) When Plaintiff showed Hall his infected and swollen foot during the second appointment, Hall saw that the shoe was "full of blood," and Plaintiff's foot "had not been treated for weeks." (<u>Id.</u>) Furthermore, the allegations indicate that Hall recognized the seriousness of Plaintiff's condition because she said, "Well, [I] guess we have to do something about that" and told him not to "show[] [her] this shit" so that she wouldn't "los[e] her lunch." (<u>Id.</u>) However, Hall did nothing to treat Plaintiff's foot. (<u>Id.</u> at p. 42.) The Eleventh Circuit has "consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." <u>Mandel</u>, 888 F.2d at 788; <u>see id.</u> at 789 ("[T]he evidence clearly established that despite repeated requests by both Mandel and his parents directed at [the physician's assistant] . . ., [he] never apprised his superior, Dr. Putnam, of Mandel's situation, obtained an x-ray of Mandel's leg, or had Mandel either examined by a doctor or taken to a hospital. When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference."); <u>see also, e.g.</u>, <u>Carswell v. Bay County</u>, 854 F.2d 454, 457 (11th Cir. 1988) (sufficient evidence existed for jury to find physician's assistant was deliberately indifferent to a prisoner's medical needs where the physician's assistant was aware of the prisoner's need for medical attention but failed to notify the supervising physician of the prisoner's worsening condition). Furthermore, to the extent Defendants argue that a medical provider's "refusal to refer a patient to a specialist is a disagreement over a course of treatment," (doc. 34-1, p. 12), the Court finds that argument

unpersuasive as it applies to Hall because the Complaint alleges that Hall failed to provide any treatment at all, (see doc. 1, p. 42).  Unlike Dr. Awe, who examined Plaintiff and provided him with an antibiotic and a water pill, Hall allegedly "did nothing" to treat or help Plaintiff.  (See id.); see Hilton, 178 F. App'x at 871 (finding that a physician's failure to refer a patient to a specialist was "a disagreement over a course of treatment" where the physician, instead, "repeatedly prescribed [multiple] medications" for plaintiff's elbow injury and provided plaintiff with two elbow braces); Hall, 2019 WL 11585183, at *8 (finding that a physician's failure to refer an inmate to a specialist did not constitute deliberate indifference where the physician examined the inmate, prescribed the inmate medications, and ordered a "full set of laboratory tests").

Defendants also argue that the Complaint lacks any factual allegations showing that Hall's inaction caused Plaintiff's injury because, by the time Hall saw Plaintiff, "Plaintiff had [already] been informed that amputation of his toe would be necessary." (Doc. 34-1, p. 12.)  This argument strains credulity.[8]  "In deliberate indifference cases, a plaintiff must allege facts indicating that the defendant's deliberate 'indifference was the actual and proximate cause of the deprivation of the inmates' eighth amendment right to be free from cruel and unusual punishment.'" McCrimager v. Swain, No. 5:18-cv-85-MCR/MJF, 2019 WL 3293294, at *9 (N.D. Fla. Feb. 22, 2019) (quoting Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988)); see Brooks v. Wilkinson County, 393 F. Supp. 3d 1147, 1165 (M.D. Ga. 2019) ("[A] plaintiff must show that the conduct complained of was the 'but for' and proximate cause of [his or her] injuries.").  The Court finds that the Complaint sufficiently alleges that Hall's deliberate indifference caused Plaintiff harm.  The Complaint alleges that Plaintiff had an appointment with Hall on May 30, 2019, during which Hall informed

---

[8]  Defendants' counsel should have thought more carefully before proffering an argument that would essentially absolve correctional officials of any responsibility to provide care to a prisoner's limb once the limb reaches the point it needs to be amputated.  In essence, counsel has argued that prison officials can just wait to provide care until a prisoner's limb falls off.

Plaintiff that "she had a lunch date and . . . no time to speak." (Doc. 1, p. 40.) Approximately one week later, on June 6, 2019, Plaintiff had another appointment with Hall, during which Hall did not provide any treatment to Plaintiff. (Id. at pp. 40, 42.) Then, the morning of June 7, 2019, Plaintiff arose and discovered that the second toe on his left foot had "fallen off overnight." (Id. at p. 40.) Finally, the Complaint alleges that, "[a]s a direct and proximate result of the deliberate indifference of . . . Hall, . . . Plaintiff suffered bodily injury" and is "entitled to recover for all damages suffered, including physical, emotional, and economic damages." (Id. at p. 43.) While Defendants are correct that the Complaint alleges that a wound care clinic had informed Plaintiff that amputation was necessary prior to Plaintiff's appointments with Hall, (id. at p. 39), Defendants' argument overlooks the pain and suffering Plaintiff purportedly experienced between his appointments with Hall and the time his toe fell off. Indeed, by Plaintiff's first appointment with Hall, Plaintiff's foot and toe were in such a poor condition that amputation was necessary. (Id.) However, according to the Complaint, Hall did not provide any treatment to Plaintiff for his foot. (Id. at p. 40.) And, critically, after approximately a week passed, Plaintiff saw Hall again, and by that time, Plaintiff's shoe was "full of blood," and the foot had not been treated "for weeks." (Id.) The severity of Plaintiff's condition is further supported by Plaintiff's allegation that, after seeing Plaintiff's foot, Hall stated, "Don't be showing me this shit or I'll be losing my lunch." (Id.) However, Hall again failed to provide any treatment to Plaintiff. (Id. at pp. 40, 42.) The Complaint sufficiently alleges facts showing that Hall's failure to treat Plaintiff caused Plaintiff physical harm as he went approximately a week (the time between his first appointment with Hall and when his toe fell off) without any treatment at all, and ultimately, Plaintiff's toe "fell off" rather than being amputated by a vascular surgeon via medical procedure. See McElligott v. Foley, 182 F.3d 1248, 1257 (11th Cir. 1999) (recognizing "that prison officials may violate the Eighth

Amendment's commands by failing to treat an inmate's pain"); Brown v. Pastrana, No. 08-20631-CIV, 2011 WL 900339, at *6 (S.D. Fla. Mar. 15, 2011) ("Plaintiff asserts the deliberate indifference caused him to lay for hours in extreme pain.  Courts have recognized that the intentional or wanton infliction of additional pain my constitute an Eighth Amendment violation.").

Based on the foregoing, the Court finds that Hall is not entitled to dismissal of the Eighth Amendment deliberate indifference claim alleged against her.

## III.   Qualified Immunity

Defendants also argue that Dr. Awe and P.A. Hall are entitled to qualified immunity.  (Doc. 34-1, pp. 12–13.)  Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) ("Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  To receive qualified immunity, government officials must first establish that they were acting within their discretionary authority during the events in question. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013).  Discretionary authority includes all actions of a government official that "(1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority."  Nam Dang, 871 F.3d at 1279 (internal quotations omitted).  Once a defendant establishes that he was acting within the scope of his discretionary authority, "the burden shifts to the plaintiff to show that qualified immunity is not

appropriate." <u>Id.</u>  To make this showing, Plaintiff "must first prove that the facts alleged, construed in the light most favorable to [him], establish that a constitutional violation did occur." <u>Shaw v. City of Selma</u>, 884 F.3d 1093, 1099 (11th Cir. 2018).  If a plaintiff establishes that a constitutional violation occurred, he or she then must demonstrate "that law existing at the time the conduct occurred clearly established that the conduct violated the constitution." <u>Id.</u>

Plaintiff does not appear to dispute that Dr. Awe and Hall were acting within their discretionary authority during the relevant time.  (<u>See</u> doc. 35, pp. 14–17.)  Thus, the qualified immunity issue turns on whether the Complaint's factual allegations establish that a constitutional violation occurred and that the law existing at the time clearly established that the alleged conduct violated the Constitution.  <u>Shaw</u>, 884 F.3d at 1099.  Concerning Dr. Awe, the Court finds that Dr. Awe is entitled to qualified immunity because, as discussed in Discussion Section I, <u>supra</u>, Plaintiff failed to show that Dr. Awe acted in a way that was deliberately indifferent in violation of the Eighth Amendment.

Concerning Hall, the Court finds that she is not entitled to qualified immunity.  As discussed in Discussion Section II, <u>supra</u>, Plaintiff sufficiently alleged that Hall violated the Eighth Amendment by responding with deliberate indifference to Plaintiff's swollen and infected left foot. Furthermore, Plaintiff has sufficiently shown that the law existing at the time of Hall's alleged conduct clearly established that her conduct violated Plaintiff's Eighth Amendment rights.  For purposes of qualified immunity, the law is considered "clearly established" when the defendant has "fair warning" that his or her conduct violated a constitutional right.  <u>Jones v. Fransen</u>, 857 F.3d 843, 851 (11th Cir. 2017).  "'Fair warning' comes in the form of binding caselaw from the Supreme Court, the Eleventh Circuit, or the highest court of the state . . . that make[s] it obvious to all reasonable government actors . . . that what he [or she] is doing violates a federal law." <u>Id.</u>

(internal quotations omitted).  A plaintiff may demonstrate that a defendant had "fair warning" that a right was clearly established in one of three ways: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." Maddox, 727 F.3d at 1121.  By May and June 2019 (the time of Hall's alleged conduct), "it was clearly established that knowledge of the need for medical care and intentional refusal to provide that care constituted deliberate indifference."  Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994); see, e.g., McElligott, 182 F.3d at 1257 (stating in 1999 that, "[o]ur cases . . . have recognized that prison officials may violated the Eighth Amendment's commands by failing to treat an inmate's pain").  Here, the Complaint's factual allegations show that Hall examined Plaintiff and saw his swollen and infected foot but failed to provide any treatment, stating that she "had no time to speak" and "had a lunch date." (Doc. 1, pp. 40, 42.)  The Complaint further alleges that during Plaintiff's second appointment with Hall, Hall noticed that Plaintiff's shoe was full of blood but told Plaintiff not to be "showing [her] this shit or [she would] be losing [her] lunch." (Id.)  Thus, as alleged, Hall's conduct violated federal law that was clearly established at the time that conduct occurred.  See Bryant v. Buck, 793 F. App'x 979, 986 (11th Cir. 2019) ("At the time of Mr. Gracia's incarceration, it was clearly established that knowledge of the need for medical care and intentional refusal to provide that care constituted deliberate indifference.  . . . Nurse Clairmont knew that Mr. Gracia . . . was crying out in pain and lying on the floor, but she failed to take any action to assess or treat him.  Accordingly, the district court correctly concluded that Nurse Clairmont is not entitled to qualified immunity . . . .") (internal quotations and citations omitted); Tarver v. McLaughlin, No. 5:14-CV-214-MTT-MSH, 2015 WL 5317449, at *6 (M.D.

Ga. June 25, 2015), report and recommendation adopted sub nom. Tarver v. Owens, No. 5:14-CV-214 (MTT), 2015 WL 5317448 (M.D. Ga. Sept. 11, 2015) (denying qualified immunity to prison medical staff who refused wound treatment for prisoner's injured leg, resulting in its amputation, and noting "examples relevant to this case include: having knowledge of an inmate's need for medical care and refusing to provide the care, Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir.1997), Mandel v. Doe, 888 F.2d 783, 788 (11th Cir.1989); delaying the treatment of serious medical needs, Harris v. Coweta County, 21 F.3d 388, 393–94 (11th Cir.1994), Brown v. Hughes, 894 F.2d 1533, 1537–39 (11th Cir.1990); and providing grossly inadequate care or taking an easier or less efficacious course of treatment. See, e.g., Steele v. Shah, 87 F.3d 1266, 1269–70 (11th Cir.1996); Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir.1985).").

Therefore, accepting the factual allegations in the Complaint as true and examining them in the light most favorable to Plaintiff, Hall is not entitled to qualified immunity. Indeed, considering that at this stage the Court must accept the factual allegations against Hall as true and must view those facts in the light most favorable to Plaintiff, it is difficult to fathom how Defendants could argue that the Complaint does not state a claim that Hall violated clearly established law. The Court optimistically presumes that Defendants have not argued that Hall is entitled to qualified immunity for purposes of tactical delay.

## CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Partial Judgment on the Pleadings. (Doc. 34.) Specifically, the Court **GRANTS** the Motion with respect to Plaintiff's Eighth Amendment deliberate indifference claims asserted against Defendants BOR and GDC, the Eighth Amendment deliberate indifference claims asserted against Defendants Dr. Awe and Hall in their official capacities, and the Eighth Amendment

deliberate indifference claim asserted against Defendant Dr. Awe in his individual capacity.  (Id.)

Accordingly, those claims are **DISMISSED**.  (Id.)  However, the Court **DENIES** the Motion with

respect to Plaintiff's Eighth Amendment deliberate indifference claim asserted against Defendant

Hall in her individual capacity.  (Id.)

      **SO ORDERED**, this 1st day of August, 2022.

 

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA